UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KEVIN RAY HOLMES,<br><br>                    Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>                    Defendant. | Case No. C13-1846-JCC-BAT<br><br>**REPORT AND RECOMMENDATION** |

Kevin Ray Holmes seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications.  He contends the ALJ erred by failing to properly consider his anxiety disorder and diabetes mellitus at step two, and by rejecting the medical opinions of Rebecca Hale, PA-C and Dr. Janice Shaw, M.D.; and Jenny Walter, PA-C and Elizabeth Gabay, M.D.  Dkt. 15.  He also contends the Appeals Council erred in finding that new evidence he submitted after his hearing did not provide a basis for changing the ALJ's decision.  *Id.*  As discussed below, the Court recommends the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

## BACKGROUND

Mr. Holmes is currently 43 years old, has a high school education, and has worked as a

REPORT AND RECOMMENDATION - 1

janitor, glazer, construction worker, and floor worker. Tr. 53, 54, 90-91. On September 9, 2010, he applied for benefits, alleging disability as of January 1, 2005. Tr. 24, 249, 256. His applications were denied initially and on reconsideration. Tr. 24; *see also* Dkt. 15 at 2. The ALJ conducted a hearing on June 27, 2012, finding Mr. Holmes not disabled. Tr. 24-41. Mr. Holmes filed a Request for Review in September, 2012, submitting new evidence. Tr. 7-18. The Appeals Council reviewed the new evidence but denied his Request for Review, making the ALJ's decision the Commissioner's final decision. Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Mr. Holmes had not engaged in substantial gainful activity since January 1, 2005, the alleged onset date.

**Step two:** Mr. Holmes had the following severe impairments: degenerative disc disease of the lumbar spine with foraminal narrowing and disc protrusion; personality disorder NOS, major depressive disorder, PTSD, attention deficit hyperactivity disorder, and alcohol abuse (in remission).

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Mr. Holmes had the residual functional capacity to lift and carry ten pounds frequently and twenty pounds occasionally; stand and/or walk six hours in an eight-hour workday and sit for the same; occasionally climb, stoop, crouch, balance and crawl; and frequently kneel. Mr. Holmes could understand, remember, and carry out simple, routine, and repetitive tasks; he should avoid contact with the general public; he could have brief and superficial contact with supervisors and coworkers and could work in parallel with coworkers but not as part of a team. Mr. Holmes works best independently. Tr. 30.

**Step four:** Mr. Holmes could not perform his past work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Mr. Holmes can perform, he is not disabled.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

Tr. 24-40.

**DISCUSSION**

**A.     The ALJ Did Not Err at Step Two**

At step two, Mr. Holmes has the burden of proof to show (1) that he has medically determinable impairments; and (2) that his medically determinable impairments are severe. *See Bowen v. Yuckert*, 482 U.S. 137, 145, (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment is medically determinable if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques; such an impairment can only be established using evidence from an acceptable medical source.  20 C.F.R. §§ 404.1508, 416.908; 20 C.F.R. §§ 404.1513(a), 416.913(a).  Acceptable medical sources include licensed physicians and licensed or certified psychologists.  *Id*.  An ALJ may consider evidence from other sources[3] to show the severity of an impairment and how it affects a claimant's ability to work.  20 C.F.R. §§ 404.1513(d), 416.913(d); *see also* Social Security Ruling ("SSR") 06-03p.[4]  *Id*.  An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520, 416.920; 20 C.F.R. §§ 404.1521, 416.921.  "[T]he step two inquiry is a *de minimis* screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

---

[3] "Other sources" include medical sources who are not acceptable medical sources, such as physicians' assistants and counselors, and non-medical sources, such as spouses or other family members.  20 C.F.R. §§ 404.1513(d), 416.913(d).

[4] Although "Social Security Rulings do not have the force of law, [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations."  *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988)); *Paulson v. Bowen*, 836 F.2d 1249, 1252 n.2 (9th Cir. 1988)) (internal citation and footnote omitted).  As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations."  *Id*. (*citing Chevron USA, Inc. v. NRDC, Inc*., 467 U.S. 837, 842-45 (1984)).

REPORT AND RECOMMENDATION - 3

### 1.   *Anxiety Disorder*

Mr. Holmes argues the ALJ overlooked his severe impairment of anxiety disorder at step two.  To demonstrate he has a medically determinable impairment, he identifies a July 2011 psychological/psychiatric evaluation by Ellen Walker Lind, Ph.D., wherein the doctor diagnosed generalized anxiety disorder.[5]  Dkt. 15 at 11; Tr. 484.  Although Dr. Lind indicated she did not observe any symptoms, she opined Mr. Holmes' anxiety would markedly impair his ability to work.  Tr. 484.  She also opined Mr. Holmes was markedly impaired in his ability to communicate and perform effectively in a work setting with public contact, explaining he was "socially anxious."  Tr. 485.

At step two of the sequential evaluation, Mr. Holmes has the burden to present evidence sufficient to establish a severe medically determinable impairment.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) ("The burden of proof is on the claimant as to steps one to four.").  He must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  20 C.F.R. §§ 404.1508, 416.908; 404.1528, 416.928.  "Symptoms" are the claimant's own descriptions of his physical or mental impairment; however, a claimant's own statement of symptoms alone will not suffice.  *Id.*

---

[5] In challenging the ALJ's rejection of Dr. Lind's July 2011 opinion, Mr. Holmes conflates the ALJ's treatment of that opinion and the doctor's July 2007 opinion.  *See* Dkt. 15 at 12; *compare* Tr. 36 *with* Tr. 37-38.  He later begins to address a challenge to the ALJ's rejection of Dr. Lind's July 2007 opinion; however, that opinion is entirely irrelevant to his step two argument because it contains no diagnosis, or even discussion, of anxiety order.  *See* Dkt. 15 at 13; *see also* Tr. 489 (diagnoses ADHD and Personality Disorder NOS).  Mr. Holmes also misinterprets the doctor's mental status examination notes, claiming she observed him with an "anxious as well as depressed mood and affect."  Dkt. 15 at 13 (*citing* Tr. 487).  The notes say no such thing.  Rather, the mental status exam contains prompts which are indicated by a list of options.  *See* Tr. 487.  Dr. Lind's selections are clearly indicated in each category.  Thus, the prompt Mr. Holmes refers to provides: "Mood and Affect—depression, anxiety, appetite, sleep, OCD, phobias?  Sleep — variable[.]  Appetite — poor."  *Id.*  The examination notes do not state Mr. Holmes exhibited depression or anxiety.

REPORT AND RECOMMENDATION - 4

"Signs" are anatomical, physiological, or psychological abnormalities which can be observed, apart from the claimant's statements. 20 C.F.R. §§ 404.1528(b), 416.928(b). Signs must be shown by medically acceptable clinical diagnostic techniques. *Id*. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, such as abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated. *Id.* "Laboratory findings" are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. §§ 404.1528(c), 416.928(c). Thus, a symptom or combination of symptoms cannot establish a medically determinable physical or mental impairment "unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96-4p.

      In relying on Dr. Lind's opinion, Mr. Holmes fails to meet his burden at step two. Dr. Lind diagnoses anxiety disorder, but the diagnosis is not supported by observed signs or laboratory findings. *See* Tr. 483-87. Dr. Lind specifically notes she did not observe Mr. Holmes' symptoms of anxiety. Tr. 484. Additionally, Mr. Holmes' mental status examination is largely unremarkable except for the observations that his sleep and memory were "variable" and his appetite "poor." Tr. 487. Nothing in the mental status examination suggests Mr. Holmes was suffering from anxiety. *See id.* In short, Dr. Lind's evaluation fails to establish anxiety disorder is a medically determinable impairment.

      Because Mr. Holmes does not establish he has a medically determinable impairment, the Court does not address whether such an impairment is severe.[6] But even if the opinion had

---

[6] The Court notes that Mr. Holmes identifies two other providers who he contends "document his

REPORT AND RECOMMENDATION - 5

established a severe, medically determinable impairment at step two, Mr. Holmes has failed to show any error was harmful. He contends the failure to include the impairment led to an incomplete RFC assessment, because the ALJ's "limitation that the claimant 'should avoid contact with the general public' does not preclude all public contact." Dkt. 15 at 12 (*citing* Tr. 30). The argument is not persuasive. Mr. Holmes merely presumes that Dr. Lind's assessments are inconsistent with his assessed RFC, but he does not explain how marked limitations in his ability to communicate and perform in a work setting with public contact clearly conflicts with the limitation in his RFC that "he should avoid contact with the general public . . . He works best independently." Tr. 30. An ALJ need not provide reasons for rejecting a physician's opinion where the ALJ incorporated them into the RFC, *Turner v. Comm'r, Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010), and when evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ, *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Accordingly, the Court recommends finding any failure to find anxiety disorder was a severe impairment at step two is harmless.

### 2. *Diabetes Mellitus*

Mr. Holmes also argues the ALJ erred in finding his medically determinable diabetes is controlled with medication, caused no functional limitations, and was non-severe. Dkt. 15 at 14 (*citing* Tr. 27). As evidence that his condition was not controlled by medication, Mr. Holmes points to a number of records between September 23, 2010 and March 2, 2012, indicating his blood sugar levels fluctuated and generally remained high. *See* Dkt. 15 at 14-17 (*citing* Tr. 377,

---

ongoing anxiety." Dkt. 15 at 13-14 (*citing* Tr. 451-52, 550-52). The Court construes these arguments as going to the issue of severity, rather than diagnosis, for two reasons: 1) the providers offer no diagnosis of anxiety disorder; and 2) the sources are not "acceptable medical sources" under 20 C.F.R. §§ 404.1513(a) and 416.913(a). Evidence from other sources may be used to show the *severity* of a claimant's impairments, but diagnosis must be established through evidence from an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).

412, 526, 536, 539, 543, 546, 553-54, 567).  The medical evidence indicates Mr. Holmes' status was continually monitored and his medications constantly modified.  The Court agrees with Mr. Holmes that some of his symptoms, *i.e.*, elevated blood sugar levels, were not fully alleviated by medication.  Even so, Mr. Holmes has not shown the condition caused functional limitations that significantly limit his ability to do basic work activities.

The record indicates Mr. Holmes exhibited symptoms of diarrhea (caused by his diabetes medication) and polyuria in late 2010.  Tr. 377, 412.  However, in February 2011, Mr. Holmes' provider noted "No sensory loss reported . . . Hypoglycemic symptoms are not occurring.  No hyperglycemic symptoms[7] are reported.  There are no symptoms to suggest diabetic complications."  Tr. 553.  An April 29, 2011 record indicates Mr. Holmes experienced "shaking" but that it was resolved with Lantus.  Tr. 543.  In July 2011, Mr. Holmes' provider noted he had "[n]o numbness or tingling.  No wounds.  NO dm high or low bs symptoms."  Tr. 536.  The record also indicates his diabetic foot exams were largely normal, with the exception of a March 2, 2012 exam that indicated he had "abnormal" scratches on his left foot.  *See* Tr. 527.  The report does not explain the source of the scratches, nor does it attribute them to any medical condition.  Treatment notes from that day also state Mr. Holmes stopped taking metformin due to diarrhea.  Tr. 526.  The record is silent as to whether his diarrhea symptoms continued after this time.

Mr. Holmes has not shown by objective medical evidence that his symptoms, including those caused by medication, affected his functional capabilities.  He simply asserts, without citation to the record, that his diabetes "significantly limits him because his need for frequent and unscheduled bathroom breaks would not be accommodated by a normal work schedule which

---

[7] According to his medical records, hyperglycemic symptoms include polyuria.  Tr. 377.

provides for a morning, lunch, and afternoon break." Dkt. 15 at 14.  Curiously, though he acknowledges his shaking was relieved with medication, he also asserts that shaking "would affect [his] ability to do feeling, fine fingering, and potentially handling." *Id.* at 14-15.  The record does not contain evidence that these symptoms would significantly limit Mr. Holmes' ability to do basic work activities.  Noticeably, Mr. Holmes' testimony also fails to provide evidence supporting functional limitations flowing from his symptoms.  Accordingly, the Court cannot say the ALJ erred in concluding diabetes did not cause functional limitations and was not severe.  The Court recommends affirming the ALJ's step two findings.

**B.     The ALD Did Not Err in Discounting the Medical Opinion Evidence**

Mr. Holmes argues the ALJ's RFC does not include all limitations supported by the record because the ALJ improperly rejected the medical opinions of Rebecca Hale, PA-C and Janice Shaw, M.D.; and Jenny Walter, PA-C and Elizabeth Gabay, M.D.; in favor of the opinion of State agency reviewing medical consultant Robert Hoskins, M.D.[8]  Dkt. 15 at 4.

Where a treating or examining doctor's opinion is contradicted by that of another doctor, it may not be rejected without "specific and legitimate reasons based on substantial evidence in the record."[9]  *Andrews v. Shalala*, 53 F.3d 1035, 1041, 1043 (9th Cir. 1995).  "The ALJ can meet

---

[8] Mr. Holmes observes that the ALJ assigned the opinion of Dr. Hoskins "significant weight," even though Dr. Hoskins did not review the medical opinion of Ms. Hale and Dr. Shaw.  Dkt. 15 at 7-8; *see also* Tr. 35.  It is not entirely clear what error, if any, Mr. Holmes attributes to the observation aside from his argument that the ALJ failed to provide specific and legitimate reasons for rejecting Ms. Hale's and Dr. Shaw's opinion.  Because Mr. Holmes acknowledges that "the controverted opinion of a treating or examining physician may be rejected in favor of the opinion of a reviewing physician for [*242] [*sic*] specific and legitimate reasons supported by substantial evidence in the record," Dkt. 15 at 5 (*citing Andrews v. Shalala*, 53 F.3d at 1041), the Court declines to address the ALJ's evaluation of Dr. Hoskins's opinion separately from its review of the ALJ's findings regarding Ms. Hale and Dr. Shaw.

[9] Neither party contends the opinions at issue may only be rejected for clear and convincing or germane reasons.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1988); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Because the contradicted opinions at issue reflect examinations

REPORT AND RECOMMENDATION - 8

this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *accord Andrews*, 53 F.3d at 1043.

### 1. *Rebecca Hale, PA-C and Janice Shaw, M.D.*

In July 2007, Rebecca Hale, PA-C, completed a physical evaluation and range of joint motion chart. Tr. 472-77. The evaluation was affirmed by Janice Shaw, M.D. Tr. 475. The ALJ assigned "minimal weight" to the opinion that Mr. Holmes was limited to sedentary[10] work, stating the opinion was insufficiently supported by the providers' findings, it was not supported by other medical evidence suggesting he "exhibited normal gait and posture," it was inconsistent with his descriptions of walking as exercise, and Mr. Holmes' back pain was resolved by physical therapy in 2010. Tr. 35.

The ALJ found Mr. Holmes' "positive right straight leg raise, a limping gait, and mildly limited forward lumbar flexion (70 degrees)," was inadequate justification for limiting him to sedentary work. Tr. 35. Mr. Holmes contends that "the ALJ failed to explain how a person with those findings . . . is absolutely able to perform greater than sedentary level work." Dkt. 15 at 7. Again, Mr. Holmes overlooks the fact that the burden is on the claimant to provide disability at

---

by "other sources" which have been affirmed by "acceptable medical sources" under 20 CFR 404.1513(d) and 416.913(d), the Court finds that the ALJ need provide specific and legitimate reasons for rejecting them. As the Commissioner notes, this standard is applied whether the acceptable medical source is an examining or treating doctor. Dkt. 16 at 14, n.4.

[10] The examination form defines sedentary work as "the ability to lift 10 pounds maximum and frequently lift and/or carry such articles as files and small tools. A sedentary job may require sitting, walking, and standing for brief periods." Tr. 474. The ALJ presumed the providers' use of "sedentary" referred to "sedentary" as that word is defined in 20 C.F.R. § 404.1567(a), which provides: "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Mr. Holmes' use of "sedentary" also alludes to the two-hour sitting and standing maximum described in SSR 96-9p. *See* Dkt. 15 at 8.

REPORT AND RECOMMENDATION - 9

steps one to four of the five-step sequential evaluation process. *Tackett*, 180 F.3d at 1098 (*citing* 20 C.F.R. § 404.1520).  Nevertheless, Mr. Holmes correctly observes that the ALJ erred in assuming the opinion was based entirely on the findings discussed by the ALJ.  The providers' physical evaluation also notes they had reviewed an x-ray showing degenerative joint disease of the back, two medications to date had not been helpful, and Mr. Holmes was tender to palpation on his spine.  Tr. 473.  But the evaluation also states, without explanation, that Mr. Holmes had severe limitations in sitting, standing, walking, lifting, and carrying; and that he had "restricted" mobility in balancing, climbing, crouching, kneeling, pulling, pushing, reaching, sitting, and stooping.  Tr. 474.  A treating physician's opinion need not be given controlling weight when it is "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings." *Batson,* 359 F.3d at 1195.  Mr. Holmes fails to proffer facts demonstrating the opinion and limitations are supported by objective findings.  On this record, the Court cannot determine that Mr. Holmes' RFC, which limits him to work activity between what would be considered sedentary or light, is not supported by the evidence.

      The ALJ also rejected Ms. Hale's and Dr. Shaw's opinion because other evidence in the record suggests Mr. Holmes had normal gait and posture.  Tr. 35.  This finding is not challenged.  The Court finds the ALJ properly discredited one of the factual bases the providers relied upon in forming their opinion.  The contradiction between the providers' finding that Mr. Holmes had a limping gait, and other, later evidence suggesting the opposite, was a valid reason for rejecting the opinion.

      Mr. Holmes next challenges the ALJ's finding that the July 2007 opinion was inconsistent with Mr. Holmes' repeated reports of walking for exercise.  Tr. 35 (*citing* hearing transcript, Tr. 341-50; 419).  Mr. Holmes does not dispute that he reported walking; rather, he

REPORT AND RECOMMENDATION - 10

argues that the ALJ has not shown that he has been walking or standing in excess of the limitations imposed by the sedentary level of work. Dkt. 15 at 8. The Court agrees. Nothing in the record describes the duration of Mr. Holmes' daily walks, and in fact, the evidence suggests he walked no longer than needed to shop for groceries or to attend class. *See* Tr. 81-82, 347, 419. Thus, this was not a specific and legitimate reason for discrediting the providers' opinions.

Finally, Mr. Holmes challenges the ALJ's finding that his back pain was resolved following physical therapy in 2010. Dkt. 15 at 8 (*citing* Tr. 35). The Commissioner contends this was a valid reason to reject the July 2007 opinion because the evidence indicated his condition would be responsive to conservative treatment. Dkt. 16 at 16. Substantial evidence does not support the ALJ's finding or the Commissioner's position. The weight of the evidence indicates that back pain continued in 2011 and 2012. *See, e.g.,* Tr. 521, 526, 555, 624, 632. Accordingly, this was not a specific and legitimate reason for discounting the July 2007 opinion.[11]

In sum, although the reasons the ALJ gave to discount the opinion are not error free, the Court concludes the ALJ's errors were harmless. This is because despite the errors, substantial evidence supports the remaining valid reasons the ALJ gave, and the errors do not negate the validity of the her ultimate determination that the opinion should be rejected. *See* Tr. 35; *see also Carmickle v. Commissioner*, 533 F.3d 1155, 1162 (9th Cir. 2008).

**2.   *Jenny Walter, PA-C and Dr. Elizabeth Gabay, M.D.***

On July 29, 2011, treating provider Jenny Walter, PA-C, opined Mr. Holmes could sit

---

[11] Mr. Holmes also argues the ALJ erred in questioning the nature of Dr. Shaw's treating relationship. Dkt. 15 at 6. The argument lacks merit for two reasons: 1) it is not clear the ALJ discounted the opinion on this basis; and 2) the standard applied in reviewing the ALJ's rejection of the opinion is the same whether Dr. Shaw was Mr. Holmes' treating or examining doctor. *See Andrews*, 53 F.3d at 1041, 1043.

REPORT AND RECOMMENDATION - 11

and stand for two hours in an eight-hour work day.  Tr. 503.  The opinion is affirmed by supervising physician Elizabeth Gabay, M.D.  The ALJ assigned the opinion "little weight," finding "no evidence to support such a severe limitation in the claimant [*sic*] abilities to sit, stand, or walk.  Ms. Walter's examination of the claimant noted restricted range of motion in the claimant [*sic*] lumbar and cervical spine, but also noted normal gait and posture (11F)"  Tr. 35.

The ALJ's remarks are hardly a model of clarity.  Nevertheless, if, on the one hand, the Court interprets the ALJ's reference to "no evidence" as based on the record as a whole, the ALJ's determination is supported by substantial evidence.  Mr. Holmes' does not point to any evidence of a clear factual basis for limitations as restricted as those opined by Ms. Walter and Dr. Gabay, and the Court finds none in the record.  On the other hand, if the Court interprets the ALJ's remarks as suggesting the opinion at issue is conclusory and unsupported, the reasoning is also valid.  *Batson,* 359 F.3d at 1195.  The providers' opinion makes no attempt to link the findings, which are scant, to the limitations that are assessed.  *See* Tr. 503-09.  For example, there is no discussion about how the observed range of motion restrictions preclude Mr. Holmes from standing or sitting more than two hours in a given day.[12]  Thus, because the ALJ's specific and legitimate reasons for rejecting the July 29, 2011 opinion are supported by substantial evidence, the Court recommends affirming the ALJ.

C.  **New Evidence**

Mr. Holmes contends the Court should find the Appeals Council erred in failing to

---

[12] Mr. Holmes contends the ALJ "failed to consider that Ms. Walter and Dr. Gabay based their opinion on their review of reports from records and additional information which showed that Plaintiff had a large right paracentral disc protrusion completely filling the right lateral recess."  Dkt. 15 at 10 (*citing* Tr. 504).  The assertion overstates the evidence.  The opinion includes a note simply stating "large R paracentral disc protrusion completely filling the right lateral recess."  Tr. 504.  It is entirely unclear what the providers relied upon in support of the statement, and there is no discussion of an impact on Mr. Holmes' ability to work.

REPORT AND RECOMMENDATION - 12

properly consider new evidence submitted by Dr. Shaw after Mr. Holmes' hearing. Dkt. 15 at 10. He also argues this additional assessment by Dr. Shaw demonstrates the doctor had a treating relationship with him. *Id.* The arguments are unavailing.

As the Commissioner correctly notes, this Court lacks jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision. *See Taylor v. Comm'r, Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). However, "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r, Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). Accordingly, the question before the Court is whether, in light of the new evidence Mr. Holmes submitted to the Appeals Council, substantial evidence supports the ALJ's decision.

Dr. Shaw completed a physical functional assessment of Mr. Holmes on July 9, 2012, which was submitted to the Appeals Council in connection with his September 2012 Request for Review. *See* Tr. 7-18. The Commissioner contends the assessment contains even fewer clinical findings than the doctor's previous assessment. Dkt. 16 at 18. The Court agrees. Dr. Shaw checked a box to indicate "[t]he patient has postural restrictions." Tr. 15. The doctor left blank boxes stating "[t]he patient can stand for six (6) hours in an eight (8) hour work day," "[t]he patient can sit for prolonged periods with occasional pushing and pulling of or [*sic*] arm or leg controls," and "[t]he patient can sit for most of the day; walking or standing for brief periods." *Id.* The doctor indicated Mr. Holmes can lift a "maximum" of 10 pounds, and can frequently lift or carry two pounds. *Id.* Attached to Dr. Shaw's assessment is a range of joint motion evaluation chart showing restricted movement in a number of categories. Tr. 17-18.

REPORT AND RECOMMENDATION - 13

Mr. Holmes concludes the assessment establishes the ALJ "could have reached a different physical RFC assessment or a different assessment of Dr. Shaw's professional relationship to the claimant . . . [and] the ALJ could have reached a very different credibility assessment." Dkt. 15 at 10-11. Mr. Holmes fails to demonstrate the Court should set aside the ALJ's decision. First, the functional assessment provides no opinion as to sitting, standing or walking limitations, because it does not describe what Mr. Holmes can do despite his impairments. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).[13] Second, the assessment is consistent with Ms. Hale's and Dr. Shaw's July 2007 opinion — which the Court finds was properly rejected by the ALJ — but provides even less explanation as to how the doctor arrived at her opinion. *Compare* Tr. 472-77 *with* Tr. 15-18. The relevant inquiry is not whether there is some evidence to support Mr. Holmes' position, but whether there was substantial evidence to support the ALJ's decision. And just as merely asserting evidence is inconsistent with an RFC is insufficient; asserting that duplicative evidence is inconsistent with an RFC is also insufficient. Mr. Holmes has not demonstrated why the evidence necessarily deprives the record of substantial evidence supporting the ALJ's decision.

Additionally, Mr. Holmes fails to establish any harm caused by the ALJ's assessment as to the nature of Dr. Shaw's treating relationship. As discussed above, it is not clear the ALJ discounted the opinion on this basis; and even if she did, the standard applied in reviewing the ALJ's rejection of the opinion is the same whether Dr. Shaw was Mr. Holmes' treating or examining doctor. *See Andrews*, 53 F.3d at 1041, 1043.

---

[13] 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2) provide: "Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."

REPORT AND RECOMMENDATION - 14

Finally, as Mr. Holmes does not challenge the ALJ's adverse credibility findings, the Court is perplexed as to his statement that the new evidence suggests the ALJ might have made a different credibility assessment. The argument is vague and unsupported; accordingly, the Court does not address it. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (declining to address assertions unaccompanied by legal arguments: "We require contentions to be accompanied by reasons."). The ALJ's decision should thus be affirmed.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision should be **AFFIRMED** and recommends the case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **August 20, 2014**. If no objections are filed, the matter will be ready for the Court's consideration on **August 21, 2014**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 6th day of August, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge